UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESUL DUZENLI, A-249-098-164 | No.  1:26-cv-0014 WBS AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.      Factual and Procedural Background

Petitioner is a native and citizen of Türkiye who fled the country after being persecuted by the government for his membership in the Hizmet Movement,[1] which is the Turkish government has labeled a terrorist organization despite it being a peaceful movement.  ECF No. 1 at 5-6.  He arrived in the United States on September 25, 2024, seeking asylum, and was detained by Immigration and Customs Enforcement (ICE).  Id. at 7.

////

---

[1]  Petitioner asserts that he has been detained and beaten by the police, had a criminal case filed against him due to his affiliation, has been extorted, received death threats, and been shot at outside his home.  ECF No. 1 at 6.

1

On November 14, 2024, petitioner was served with a Notice to Appear, charging him with being removable under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(6)(A)(i). ECF No. 1 at 7; ECF No. 1-6. On March 3, 2025, petitioner submitted an Application for Asylum, Withholding of Removal, and Withholding of Removal under the Convention Against Torture. ECF No. 1 at 7; ECF No. 1-7. On June 18, 2025, petitioner's application for asylum was denied, but the immigration judge granted him withholding of removal. ECF No. 1 at 9-10; ECF No. 1-2. Neither party appealed.

On November 4, 2025, a decision was made to continue petitioner's detention pending removal. ECF No. 1 at 10; ECF No. 1-3. The decision stated that petitioner had not shown that, if released, he would not pose a safety or flight risk and that his removal to a third country remained pending. ECF No. 1-3 at 2. Petitioner remains detained to this day.

Petitioner also asserts that when he was detained, he surrendered his personal mobile phone and asylum file, both of which were later given to an unrelated detainee who was removed to Türkiye with petitioner's phone and paperwork. ECF No. 1 at 10.

On January 2, 2026, petitioner, through counsel, filed a petition for writ of habeas corpus under § 2241. ECF No. 1. Respondents have filed an answer to the petition (ECF No. 7) and petitioner has filed a reply (ECF No. 8). On April 28, 2026, the undersigned found that, by either parties' calculation, it had been six months since petitioner's order of removal became final and ordered petitioner to "file a supplement to the petition setting forth why there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 9. Respondents were provided an opportunity to rebut any such showing. Id. Petitioner submitted his supplemental brief on April 29, 2026. ECF No. 10. Respondents have not filed a response and their time to do so has passed.

II.     Petition

The petition asserts that petitioner's detention violates both his substantive and procedural due process rights. First, he alleges that his substantive due process rights have been violated because his "continued detention is no longer reasonably related to the government's interest in removal" and that the government has created a danger to petitioner by releasing his asylum

2

paperwork and phone to another individual who was subsequently removed to Türkiye.  ECF No. 1 at 13.  Second, he argues that his procedural due process rights have been violated because he has been detained beyond the six-month presumptively reasonable post-removal order period established by Zadvydas v. Davis, 533 U.S. 678 (2001), without receiving an individualized bond hearing.  Id.

Respondents argue in opposition that petitioner's detention is lawful because he has received all the process he is due; his detention is presumptively reasonable until April 16, 2026; he has failed to provide evidence the government released his paperwork to an unrelated third-party who was later removed to Türkiye; and even if the government did mistakenly release petitioner's property, the government is not attempting to remove him to Türkiye.  ECF No. 16 at 2-3.

At the direction of the court, petitioner provided supplemental briefing in which he addressed the likelihood of his removal in the reasonably foreseeable future.  ECF No. 10. Petitioner asserts that removal is not likely because it has been ten months since his order of removal became final and the government has had no meaningful contact with him regarding his removal since January 2026 and has yet to identify any safe third country that is willing to accept him.  Id. at 1-2.  Respondents have not responded to petitioner's claim.

III.    Discussion

A.    State Created Danger

Petitioner alleges the release of his cell phone and asylum file to an unrelated third-party who was later removed to Türkiye constitutes a state-created danger.  However, while a state-created danger can "be invoked to enjoin deportation," Morgan v. Gonzales, 495 F.3d 1084, 1093 (9th Cir. 2007), petitioner does not explain how the alleged state-created danger justifies the relief he seeks, which is release.  Moreover, as respondents point out, petitioner has been granted withholding of removal to Türkiye, so petitioner cannot be removed to Türkiye, where he asserts the state-created danger exists.  Therefore, while the allegation that the government gave petitioner's sensitive materials to another person and them removed that person to Türkiye is concerning, it does not provide grounds for grating the relief petitioner seeks.

3

B.     Procedural Due Process

Petitioner also argues that his detention violates his right to procedural due process because it has exceeded the presumptively reasonable period set by Zadvydas and he has not been provided a bond hearing, which he asserts is required by Ninth Circuit precedent.  ECF No. 1 at 3, 12-13.  Although he does not cite any authority in the petition, petitioner includes a citation to Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), in his reply.  ECF No. 8 at 5.  But the line of cases which petitioner appears to invoke has been largely, if not entirely, overturned by the Supreme Court, and the Ninth Circuit has recognized that though it "previously concluded that bond hearings and certain procedures were statutorily required under §§ 1225(b), 1226(c), and 1231(a)(6) based on the doctrine of constitutional avoidance, the Supreme Court has since held that none of these rights exist as a statutory matter."  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1198-1202 (9th Cir. 2022) (discussing history of Ninth Circuit cases finding statutory right to a bond hearing under various immigration statutes and recognizing that cases had been partially, if not entirely overturned).  Petitioner therefore fails to establish a right to relief on this claim.

C.     Post-Removal Order Detention

i.     Legal Standards

Petitioner argues that his substantive due process rights have been violated because his "continued detention is no longer reasonably related to the government's interest in removal." Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period."  Id., § 1231(a)(1)(A).

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6). Petitioner was charged as inadmissible under § 1182, which brings him

within the scope of this discretionary detention provision.

In Zadvydas, the Supreme Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention." 533 U.S. at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention."  Id. at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  Id.  While Zadvydas applied this construction to a removable non-citizen, the Supreme Court later found that it necessarily applied to the first category of non-citizens—those inadmissible under § 1182—as well.  Clark v. Martinez, 543 U.S. 371, 377-78, 386 (2005).

ii.    Analysis

Petitioner asserts that his post-final removal order detention violates due process because it has extended beyond the presumptively reasonable period for post-removal order detention and there is no indication he will be removed in the reasonably foreseeable future.  ECF No. 1 at 2-3. He argues that his removal order became final on June 18, 2025, and the six-month period of presumptive reasonableness therefore ended on December 15, 2025.[2]

Respondents argue the petition is premature because petitioner's detention is presumptively reasonable until at least April 16, 2026.  ECF No. 7 at 2-3.  They argue that petitioner's order of removal did not become final until the thirty-day appeals period expired on July 18, 2025, and that the six-month period under Zadvydas did not begin to run until October

---

[2]  In one instance, petitioner argues that his detention became "presumptively unconstitutional" after six months (ECF No. 1 at 12), which respondents argue is unsupported by any authority (ECF No. 7 at 2).  Under Zadvydas, the six-month post-final removal order period is one of presumptive "reasonableness," not "constitutionality."  533 U.S. at 701.  Though the two terms may overlap, they are not synonymous.  However, elsewhere in the petition petitioner uses the correct terminology (ECF No. 1 at 2, 13), and his petition is understood to be arguing his detention is no longer presumptively reasonable.

5

16, 2025, after the initial ninety-day removal period expired. Id. at 1-2.

Upon review of the record, the undersigned concludes that neither party is correct regarding the end of the period of presumptive reasonableness. "Except when certified to the Board [of Immigration Appeals], the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first." 8 C.F.R. § 1003.39. It is undisputed that petitioner did not appeal the removal order, but petitioner provides no evidence that he affirmatively waived his appeal as opposed to waiving his appeal by allowing the appeals period to lapse. Absent evidence of an affirmative waiver and the date of such waiver, the undersigned must assume that respondents are correct on this point and the order became final thirty days later, on July 18, 2025. The period of mandatory detention during ninety-day removal period then began to run, and expired on October 16, 2025. See 8 U.S.C. § 1231(a)(1)(A) (after order of removal, "the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period');" § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien.").

However, contrary to respondents' unsupported claim that the six-month period set forth in Zadvydas begins to run after the initial ninety-day removal period expires (ECF No. 7 at 2), the Ninth Circuit has noted that "in Zadvydas, 121 S. Ct. at 2505, the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of *six months* after a final order of removal—that is *three months* after the statutory removal period has ended." Kim Ho Ma v. Ashcroft, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001). Petitioner's detention therefore ceased to be presumptively reasonable after January 18, 2026.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

In this case, there is nothing in the record to suggest a likelihood that petitioner will be deported at any time in the reasonably foreseeable future, nor is there evidence in the record that respondents are taking any steps to remove petitioner.  Petitioner cannot be removed to his home country since he was granted withholding or removal, and although the November 4, 2025 Decision to Continue Detention states that "acceptance for removal to a third country remains pending" (ECF No. 1-3 at 2), there is no indication in the letter or respondents' answer that a third country has been identified or that any steps have been taken to identify a country for removal.  In fact, petitioner explicitly asserts that the government has not identified a country for removal, and the government has not rebutted that claim despite being given the opportunity to do so. Respondents have not offered a timeline for removal or any information or evidence regarding steps they have taken to identify a third country for removal.  Nor do they dispute petitioner's assertion that he is "cooperating with all reasonable requests by ICE to secure travel documents to a safe third country."  ECF No. 1 at 11.  It has been nearly ten months since petitioner's removal order became final, and there is no evidence that respondents have made any effort to carry out his removal during that time, let alone identify a country for removal.

In sum, petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and respondents have not produced any evidence that would rebut that showing.  The petition should therefore be granted and respondents ordered to immediately release petitioner subject to appropriate conditions of release. See Johnson v. Guzman Chavez, 594 U.S. 523, 529 (2021) ("if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing or release the alien." (quoting Zadvydas, 533 U.S. at 701)).

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to petitioner's claim that his continued detention violates substantive due process because there is no significant

7

likelihood of removal in the reasonably foreseeable future and DENIED as to petitioner's other claims.

2.   Respondent must IMMEDIATELY RELEASE petitioner Resul Duzenli, A-249-098-164, from custody subject to reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). At the time of release, respondents must return all of petitioner's documents and possessions.

3.   Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release.

4.   The Clerk of the Court shall enter judgement in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Within three days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within three days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 14, 2026

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

8